**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| LARRY WARREN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-02977-TWP-DLP |
| | ) | |
| DENNIS REAGLE, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

This matter is before the Court on a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, (Dkt. 2), by Petitioner Larry Warren ("Warren"), challenging his convictions for child molesting under Marion Superior Court Cause No. 49G22-1001-FA-1153. Warren raises claims for ineffective assistance of trial counsel, ineffective assistance of appellate counsel on direct appeal, ineffective assistance of appellate counsel following his resentencing hearing, and ineffective assistance of post-conviction counsel.  He also claims that the post-conviction court should have held a resentencing hearing after it vacated his convictions for child solicitation, rather than merely vacating those sentences.

First, Warren's claim against his trial counsel is denied on the merits because the Indiana Court of Appeals reasonably applied existing United States Supreme Court precedent and made reasonable factual determinations based on the evidence in the record.  Second, his claim against direct appeal counsel and his claim about the post-conviction court's failure to hold a resentencing hearing are procedurally defaulted because he did not raise those issues to the Indiana Supreme Court.  Third, his claim against his appellate counsel on resentencing asks the Court to overrule the Indiana Court of Appeals' interpretation of an Indiana statute, which this Court may not do.

Finally, his claim against post-conviction counsel is not cognizable on habeas review and does not excuse procedural default.  Accordingly, Warren's habeas petition is **denied**.

## I.  BACKGROUND

**A.      Underlying Criminal Conduct and Trial**

Warren was convicted of three counts of child molesting.  The victim was J.R.  J.R.'s mother and Warren were business partners and were also romantically involved.  Warren began molesting J.R. shortly after meeting her, when J.R. was nine years old and Warren was thirty-three years old.  For the first few years, the molestation included oral sexual abuse and occasional vaginal penetration.  When J.R. was thirteen, around the time her father was dying of cancer, the molestation began to include abusive sexual intercourse as well.  Warren would often videotape and photograph these molestations.  This continued until J.R. was about fourteen and a half, at which time Warren left the state for work. *See Warren v. State*, 145 N.E.3d 128, *1 (Ind. Ct. App. 2019) ("*Warren III*"); Dkt. 11-5, p. 132.

Warren reentered J.R.'s life when she was eighteen or nineteen.  He paid the rent on her apartment for one year.  Around the time he stopped paying her rent, J.R. talked about what happened during her childhood with a group of friends.  She came to realize that what she experienced with Warren was not a romantic relationship but was, in fact, childhood sexual abuse.  She told her mother what happened, and the two of them reported the abuse to the police.  *Warren III* at *1; Dkt. 11-5, pp. 77-78.

Warren was charged with five counts of child molesting before J.R. turned fourteen, and two counts of child solicitation when J.R. was fourteen.  The State of Indiana admitted into evidence a video that showed, among other things, Warren digitally penetrating J.R. when she was fourteen, sexually explicit language about J.R., and other abusive sexual activity ("Exhibit 15").

Warren objected to this video in a motion *in limine*, but failed to make a contemporaneous objection at trial, thereby waiving the issue for review.  Warren was found guilty of three counts of child molesting and two counts of child solicitation.  He received an aggregate sentence of 80 years.  Two of his 40-year child molesting sentences ran consecutively; his other child molesting sentence and child solicitation sentences ran concurrently.  *Warren III* at *2-4.

**B.      Direct Appeal**

On direct appeal, Warren raised a single issue for review:  "Whether the trial court erred when it enhanced Warren's sentence based on aggravators that were neither found by a jury nor admitted in accordance with the holding in *Blakely v. Washington*, 542 U.S. 296 (2004)" (cleaned up).  The Indiana Court of Appeals held that two of the three aggravators violated *Blakely*, and the court remanded the case for resentencing.  During resentencing, the state had the option of proving the remaining aggravators to a jury or proceeding with resentencing based on a single aggravator—that Warren had violated a position of trust when he molested J.R.  *Warren III* at *4; *Warren v. State*, 995 N.E.2d 730 (Ind. Ct. App. 2013) ("*Warren I*").

**C.      Resentencing**

During resentencing, the state did not attempt to prove the remaining aggravators to a jury, electing instead to proceed with a single aggravator for violating a position of trust.  Warren presented evidence and argument as to several proposed mitigators.  These included his diagnosis for post-traumatic stress disorder, his own childhood sexual abuse, his military service, his completion of programming in prison, his lack of criminal history, and the finding in his presentence investigation report that he was at a low risk for recidivism.  *Warren III* at *5.

The trial court rejected all of these proposed mitigators except Warren's lack of prior criminal history.  The trial court then found that this mitigator was outweighed by the aggravator

that Warren had violated a position of trust.  Warren received an aggregate sentence of seventy years. Two of his thirty-five year child molesting sentences ran consecutively; the remaining sentences for child molesting and child solicitation ran concurrently.  *Id.*

Warren raised two issues in his resentencing appeal:  that the trial court erred in rejecting his proposed mitigators, and that the seventy-year aggregate sentence was inappropriate in light of his character and the nature of his offenses.  The Indiana Court of Appeals rejected these arguments and affirmed Warren's sentence.  *Warren III* at * 5; *Warren v. State*, 20 N.E.3d 927 (Ind. Ct. App. 2014) ("*Warren II*").

**D.     Post-Conviction Relief**

Warren filed a petition for post-conviction relief in state court, where he was represented by the Indiana State Public Defenders Office.  Warren pointed out that when J.R. was fourteen; Indiana's child solicitation statute only criminalized solicitation of children who were *under the age* of fourteen.  Warren, however, was charged with the version of the child solicitation statute that was in effect at the time of his trial, which applied to the solicitation of children between the ages of fourteen and sixteen by an adult who was at least twenty-one.  Thus, Warren argued, his convictions for child solicitation when J.R. was fourteen violated his protection from *ex post facto* criminal proceedings.

In his amended petition for post-conviction relief, Warren raised the following claims:  that he received ineffective assistance of trial counsel for not moving to dismiss the child solicitation charges, and for not objecting to the admission of Exhibit 15 under Indiana Evidence Rules 401, 402, 403, and 404(b); that he received ineffective assistance of appellate counsel on direct appeal for failing to raise those same issues as fundamental error; and that he received ineffective assistance of appellate counsel on resentencing for failing to argue that the trial court did not

4

sufficiently explain its reasons for imposing consecutive sentences in violation of an Indiana statute. *See* Dkt. 11-12, pp. 46-54 (amended post-conviction relief petition).

The post-conviction court concluded that trial counsel was ineffective for not moving to dismiss the child solicitation charges and vacated those convictions. The post-conviction court also found that trial counsel's failure to object to Exhibit 15 at trial fell below prevailing professional standards. However, the post-conviction court determined that Warren was not prejudiced by this performance because the trial court likely would not have granted the objection and that, even if the objection had been successful, there was not a reasonable probability that it would have affected the outcome. The post-conviction court denied his claim for ineffective assistance of appellate counsel on direct appeal for the same reasons. *Id.* at 142-65.

Finally, the post-conviction court rejected Warren's claim for ineffective assistance of appellate counsel following the resentencing hearing. According to resentencing appellate counsel's testimony at the post-conviction hearing, even if Warren had been successful on this issue, the result would have been to remand the case for a resentencing hearing in the trial court. Counsel believed that if a resentencing had occurred, the result would have been the same—a seventy-year aggregate sentence. Instead, counsel chose to raise sentencing issues that would have empowered the Indiana Court of Appeals to revise the sentence itself, without remand to the trial court. *See id.* at p. 156, § 106. The post-conviction court denied Warren's request for relief on this claim because the trial court's explanation for imposing consecutive sentences was sufficient and because resentencing appellate counsel's decision to omit this issue was a strategic choice. *Id.* at 163-65.

On post-conviction appeal, Warren appealed the denial of his claims for ineffective assistance of trial, direct appeal, and resentencing appellate counsel. He also appealed the

post-conviction court's failure to hold a resentencing hearing after vacating his child solicitation convictions.  *See* Dkt. 10-15 (brief of appellant on post-conviction appeal).

Warren argued that Exhibit 15 was only relevant to his now-vacated child solicitation charges, that it was more prejudicial than probative of his child molesting charges, and that it was evidence of a prior bad act in violation of Indiana Evidence Rule 404(b).  If trial counsel had made a contemporaneous objection, he argued, the trial court would have been required to sustain the objection.

In rejecting this argument, the Indiana Court of Appeals found that Exhibit 15 was relevant to his child molesting charges.  The court made no finding as to whether Exhibit 15 should have been excluded under Indiana Evidence Rules 403 or 404(b).  Instead, the court determined that even if the admission of Exhibit 15 had violated Rules 403 or 404(b), Warren had not demonstrated that he was prejudiced by this error under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The court acknowledged that the trial was essentially a question of J.R.'s credibility and that Exhibit 15 was "graphic" and "disturbing."  However, J.R.'s testimony itself involved a graphic and detailed account of years of sexual abuse by Warren.  Her testimony was corroborated by explicit sexual photographs Warren took of J.R. when she was under the age of fourteen and a letter Warren received from J.R. when she was twelve indicating her belief they were involved in a romantic relationship.  Finally, trial counsel had the opportunity to cross-examine J.R., and the prejudicial impact of Exhibit 15 was mitigated by trial counsel's opening statement, when she told the jury that Exhibit 15 could not be used to prove the allegations of child molesting.  After considering all of these factors, the Indiana Court of Appeals unanimously concluded there was "no reasonable probability that, but for the admission of Exhibit 15, the proceedings below would have resulted in a different outcome."  *Warren III* at *9-11.

The Indiana Court of Appeals also rejected Warren's claim that appellate counsel was ineffective on direct appeal for failing to challenge the admission of Exhibit 15 as fundamental error. The court reasoned that its no-prejudice finding regarding trial counsel's failure to object to the admission of Exhibit 15 also necessitated a no-prejudice finding as to appellate counsel's failure to raise this issue on appeal under the more onerous fundamental error standard. *Id.* at *11.

The Indiana Court of Appeals unanimously rejected Warren's claim that appellate counsel was ineffective on resentencing for failing to challenge the sufficiency of the trial court's explanation for imposing consecutive sentences. The court determined that, under Indiana law, the trial court provided a sufficient explanation for the imposition of consecutive sentences based on its finding that the aggravating factor (violating a position of trust) outweighed the mitigating factor (lack of prior criminal history). The court concluded that Warren was not prejudiced by appellate counsel's failure to raise this issue on appeal of his resentencing hearing. *Id.* at *12.

Finally, the Indiana Court of Appeals held that the post-conviction court did not abuse its discretion when it failed to hold a second resentencing hearing after vacating Warren's conviction for child solicitation. *Id.* at *15.

In his petition to transfer to the Indiana Supreme Court, Warren again raised his claims for ineffective assistance of trial counsel and ineffective assistance of appellate counsel following his resentencing hearing. (Dkt. 10-19.) However, Warren abandoned his claim alleging ineffective assistance of appellate counsel on direct appeal and his claim that the post-conviction court should have held a resentencing hearing after vacating his child solicitation convictions. *Id.* The Indiana Supreme Court unanimously denied Warren's petition to transfer. (Dkt. 10-14, p. 6.)

## II. <u>LEGAL STANDARD</u>

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted).  "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302.  "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted).

"This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III. DISCUSSION

**A.** **Ineffective Assistance of Trial Counsel**

**1.** **Legal Standard**

For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must show (1) that counsel rendered deficient performance that (2) prejudiced the

petitioner. *Strickland*, 466 U.S. at 687.  With respect to the performance requirement, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). A petitioner who raises ineffective assistance of counsel must overcome a "strong presumption that counsel was effective." *U.S. v. Pergler*, 233 F.3d 1005, 1008-09 (7th Cir. 2000). "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 534 (quoting *Strickland*, 466 U.S. at 694).  The Supreme Court has avoided assigning a numerical probability to the inquiry; the court has explained that the likelihood of a different result need not be "more likely than not" but nonetheless "must be substantial." *Myers v. Neal*, 975 F.3d 611, 623 (7th Cir. 2020) (quoting *Richter*, 562 U.S. at 111–12).

### 2.    Analysis

In this case, the Indiana Court of Appeals correctly identified the two-prong standard for ineffective assistance of trial counsel set forth in *Strickland*.  *See Warren III* at *8.  The court then proceeded to analyze Warren's ineffective assistance of trial counsel claim under the *Strickland* standard. *Id.* at 8-11.

The Indiana Court of Appeals noted there was substantial evidence that Warren molested J.R. on at least three separate occasions before she turned fourteen.  By virtue of his intimate relationship with J.R.'s mother, Warren had frequent opportunities to molest J.R. when she was alone with him and entrusted to his care and supervision.  J.R. provided graphic and detailed testimony about the years of sexual abuse she suffered when Warren was supposed to be looking after her.  Her testimony was corroborated by sexually explicit photographs Warren took of J.R.

before she turned fourteen and a letter Warren received indicating J.R.'s belief that they were in a romantic relationship.  The Indiana Court of Appeals also found that, as a matter of state law, Exhibit 15 was relevant to these charges because it demonstrated that Warren had sexually abused J.R. when she was still a child.  *Warren III* at \*10.

The Indiana Court of Appeals acknowledged that Exhibit 15 was "graphic" and "disturbing."  *Id*.  The Court also acknowledged that this case, like many child molesting cases, largely came down to the credibility of the victim.  But the court reasoned that Warren had the opportunity to challenge J.R.'s testimony during cross-examination.  *Id*.  Indeed, Warren himself argues that trial counsel's cross-examination of J.R. exposed "subtle, but significant, weaknesses in the State's evidence."  *See* Dkt. 2, pp. 18-20.  The court also reasoned the prejudice of Exhibit 15 was mitigated by trial counsel's opening statement, where she told the jury that Warren could not be convicted of child molesting based the abuse depicted in Exhibit 15 because by that time, J.R. was already fourteen.  *Warren III* at \*10.  Finally, Warren was able to attack J.R.'s credibility when he testified in his own defense and contradicted her version of the events.  *Id*.  He was able to present his own theory of the case, which the jury ultimately rejected, that he was being extorted for money when he stopped paying the rent on J.R.'s apartment.  *Id*.

Warren argues that the Indiana Court of Appeals unreasonably assessed the prejudice of Exhibit 15 when it failed to consider that five of the thirteen juror questions directly pertained to Exhibit 15.  *See* Dkt. 16, p. 21.  The Court is not persuaded by this argument.  True, five of the juror questions did pertain to Exhibit 15.  However, a close inspection of these juror questions reveals that three of the five questions were unrelated to the objectionable sexual abuse in the video.  *See* Dkt. 11-2, p. 111 ("Why did you allow [J.R.] to drive your car? Was this the only time?"); *id.* at 358 ("Was the video shown as evidence (#15) one full video found on one tape or a

collection from the house[?]").  The other two questions sought clarification on when the events depicted in the video occurred. *See id.* at 113 ("What was the month / year mentioned in recording?"); *id.* at 115 ("Was the date of the video evidence's recording determined?").

If anything, these juror questions suggest that the jurors took a critical view of Exhibit 15. Rather than merely reacting to the disturbing contents of Exhibit 15, the jurors wanted to know when those events took place.  Such an inquiry was wholly appropriate, as Warren could not have been convicted of child molesting based on abuse that he inflicted upon J.R. after she turned fourteen.  The juror questions do not support a finding of prejudice, or that the Indiana Court of Appeals unreasonably applied United States Supreme Court precedent or made an unreasonable factual determination simply because the court failed to address those questions in its analysis.

Warren also argues that the Indiana Court of Appeals failed to consider that he was acquitted of two of his five child molesting charges.  He believes that "the jury's decision to convict on three child molesting counts may well have turned on its exposure to improper evidence—here, a video of Warren engaging in sexual activity with J.R." (Dkt. 16, p. 22; *see also* Dkt. 10-19, pp. 13-14 (transfer petition) (suggesting the acquittals on two counts suggested that Exhibit 15 improperly influenced the jury to convict on the other three).)

Again, the Court is unpersuaded.  If anything, the fact that the jury convicted Warren of three counts of child molesting and acquitted on the other two suggests that the jury examined the evidence critically and applied the relevant provisions of the child molesting statute to the evidence presented.  The danger in admitting overly prejudicial evidence, or inadmissible evidence of prior bad acts, is that the jurors will be so affected by the evidence that they abandon their obligation to review the evidence as a whole and hold the state to its burden of proof beyond a reasonable doubt. *See Ingram v. State*, 715 N.E.2d 405, 407 (Ind. 1999) ("Unfair prejudice addresses the way in

which the jury is expected to respond to the evidence; it looks to the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence to suggest decision on an improper basis.") (quoting 13 Robert Lowell Miller, *Indiana Practice* § 616.101 (1995)); *Bell v. State*, 29 N.E.3d 137, 142 (Ind. Ct. App. 2015) ("When determining any unfair prejudicial impact, courts should look for the dangers that the jury will substantially overestimate the value of the evidence or that the evidence will arouse or inflame the passions or sympathies of the jury."). Here, the fact that the jury acquitted Warren on two of the five counts of child molesting suggests that Exhibit 15 did not so inflame the jurors that they were unable to uphold their duties and assess the evidence critically and does not support a finding of prejudice from trial counsel's unprofessional error.

To summarize, the Indiana Court of Appeals correctly identified the two-prong standard in *Strickland*. It conducted a thorough analysis of the prejudice of trial counsel's failure to object to Exhibit 15. This analysis included factors that weighed in favor of a no-prejudice finding, such as the substantial evidence of Warren's guilt and counsel's efforts to mitigate any unfair prejudice, but also acknowledged factors that weighed in favor of a prejudice finding, such as the disturbing nature of Exhibit 15 and the fact that the trial ultimately came down to a determination of J.R.'s credibility versus Warren's credibility. After considering all these factors, the court found that Warren was not prejudiced by trial counsel's failure to object. Warren's argument that the court ignored other factors that weighed in favor of a finding of prejudice, *i.e.*, juror questions about Exhibit 15 and Warren's acquittal on two counts of child molesting, are unpersuasive. Having considered all these factors, the Court finds that the Indiana Court of Appeals' no-prejudice analysis was a reasonable application of existing precedent from the United States Supreme Court and a reasonable determination of the facts in the record. Accordingly, Warren's claim for ineffective assistance of trial counsel is **denied**.

13

**B.**     **Ineffective Assistance of Direct Appeal Counsel**

The Respondent argues that Warren's claim against his direct appeal counsel is procedurally defaulted because Warren did not raise that claim in his petition to transfer to the Indiana Supreme Court. (Dkt. 10, pp. 17-19.) In his response brief, Warren says that he did raise this claim in his petition to transfer, *see* Dkt. 16, p. 23, but this is plainly false. The only issues he raised in his petition to transfer were ineffective assistance of trial counsel and ineffective assistance of appellate counsel following his resentencing hearing. *See* Dkt. 10-19.

> To protect the primary role of state courts in remedying alleged constitutional errors in state criminal proceedings, federal courts will not review a habeas petition unless the prisoner has fairly presented his claims throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.

*Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (citation and quotation marks omitted); *see* 28 U.S.C. § 2254(b)(1)(A). Where a state prisoner has failed to exhaust a claim in his habeas petition, and the opportunity to do so is no longer available, that claim is procedurally defaulted. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

Warren's claim for ineffective assistance of appellate counsel on direct appeal is procedurally defaulted. Warren has not argued that he is entitled to an equitable exception excusing his procedural default, and no such exception is apparent from the record. Accordingly, his claim for ineffective assistance of appellate counsel on direct appeal is **denied**.

**C.**     **Ineffective Assistance of Resentencing Appeal Counsel**

Warren claims that he received ineffective assistance of appellate counsel following his resentencing hearing. (Dkt. 2, pp. 31-35.) He specifically argues that appellate counsel should have raised a claim challenging the sufficiency of the trial court's explanation for imposing consecutive sentences, in violation of an Indiana sentencing statute. *Id.* He does not argue that

the alleged insufficiency of the trial court's sentencing statement itself violated a federal constitutional right; instead, he merely argues that counsel's failure to raise this issue on appeal prejudiced his opportunities for relief under state law.  *Id.*  In rejecting this claim, the Indiana Court of Appeals held that, as a matter of state law, the trial court's sentencing statement was sufficient and that raising the issue on appeal would have been futile.  *Warren III* at *13.  Thus, the court held that Warren was not prejudiced by appellate counsel's failure to raise this issue.

To obtain federal habeas relief under 28 U.S.C. § 2254(d)(1), the petitioner must show that the state court's decision was "an unreasonable application of federal law—not a state court's resolution of a state law issue." *Kimbrough v. Neal*, 941 F.3d 879, 882 (7th Cir. 2019). In *Kimbrough*, the state court held that an Indiana prisoner was not prejudiced by counsel's failure to raise a state-law sentencing issue on appeal because, as a matter of state law, the argument would have been futile.  *Id.* at 881-82.  The Seventh Circuit, in turn, held that the state court's finding of futility as a matter of state law was not subject to revision by the federal courts.

So too, here.  The Indiana Court of Appeals held that Warren was not prejudiced by appellate counsel's failure to raise a state law sentencing issue because, as a matter of state law, the argument would have been futile.  This Court has no authority to overrule the Indiana Court of Appeals on a matter of state law.  Accordingly, Warren's claim for ineffective assistance of appellate counsel following his resentencing hearing is **denied**.

### D.  Ineffective Assistance of Post-Conviction Counsel

Warren claims that he received ineffective assistance of post-conviction counsel.  He argues that post-conviction counsel should have argued that trial counsel was ineffective for failing to impeach J.R.'s testimony with prior inconsistent statements, failing to move for a mistrial, and failing to challenge the sufficiency of the evidence of his child molesting convictions.  (Dkt. 2, pp.

41-45.)  He also argues that post-conviction counsel should have moved to stay the post-conviction

proceedings to obtain exculpatory evidence that would have shown that J.R.'s testimony was false

before the evidence was destroyed.  *Id.* at 45-47.  According to Warren, video and audio recordings

law enforcement had seized from his mother's house, which were destroyed in July 2020, would

have shown that J.R. was extorting him and had not been molested by him before she turned

fourteen.  *Id.* at 46, n.3.

The Constitution does not guarantee the right to counsel in state post-conviction

proceedings, and ineffective assistance of post-conviction counsel is not a cognizable claim on

habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 755 (1991).  Thus, Warren may not proceed

on a standalone ineffective assistance of post-conviction counsel claim in this action.

In some circumstances, petitioners may seek to present a procedurally defaulted claim for

ineffective assistance of trial counsel where the procedural default was caused by the

ineffectiveness of post-conviction relief counsel.  *Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012).

This exception only applies when state law requires prisoners to raise claims of ineffective

assistance of trial counsel on collateral review.  *Id*.  For a district court to excuse the procedural

default, the defaulted claim must have "some merit."  *Id.*

Construing the petition in the light most favorable to Warren, the Court reads his claim

about post-conviction counsel's ineffectiveness as a claim that trial counsel was ineffective, and

that post-conviction counsel's ineffectiveness should excuse any procedural defaults.   To

determine whether a procedurally defaulted ineffective assistance of trial counsel claim has "some

merit," courts are guided by the two-prong approach set forth in *Strickland* and its progeny.  *Brown

v. Brown*, 847 F.3d 502, 515 (7th Cir. 2017).  To avoid procedural default, the petitioner must

make a "substantial showing" of trial counsel's deficient performance and the prejudice petitioner

suffered because of this deficient performance.  *Id.*  "Substantiality is a threshold inquiry; full consideration of the merits is not required."  *Id.*

### 1.    <u>Exculpatory Evidence</u>

Warren's claim about exculpatory evidence is unrelated to any claim for ineffective assistance of trial counsel and may not proceed under this exception.  *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (excluding all claims from this exception other than those for ineffective assistance of trial counsel).

### 2.    <u>Inconsistent Statements</u>

Warren claims that post-conviction counsel should have argued that trial counsel was ineffective for failing to impeach J.R. with her prior inconsistent statements.  Liberally construed, Warren's petition also claims that post-conviction counsel should have argued that trial counsel was ineffective for failing to move for a mistrial under *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (prosecutors may not knowingly suborn perjury during a criminal trial).

Warren has produced a document cataloging what he believes are J.R.'s inconsistent statements.  *See* Dkt. 2-1.  However, these inconsistencies are either minor, immaterial, or not inconsistencies at all.  For example, Warren claims that in one statement J.R. said she did not know what her mother was doing during one of Warren's molestations; in another statement, she said her mother was working; and in another statement, she said her mother was sleeping.  *Id.* at 1.  This is a minor inconsistency, the sort that is to be expected from an adult testifying about sexual abuse she suffered years ago as a child.  The same is true for Warren's argument that at one point, J.R. said she was wearing a t-shirt and pants while he molested her and later said she was wearing pajamas.  *Id.*  Warren also argues that at another point, J.R. said he vaginally penetrated her a "couple" times without lubrication before she turned thirteen but at trial said this occurred

"multiple" times.  *Id.* at 4.  This is not an inconsistency; saying something happened a couple times necessarily means more than once.

Warren's list of alleged inconsistencies goes on like this for close to one hundred pages. None of these alleged inconsistences suggests that the prosecutor knowingly suborned perjury. The only thing they show for sure is that J.R. did not have a perfect recollection of the years of sexual abuse she suffered when she was a child.  Furthermore, Warren notes in his habeas petition that trial counsel effectively cross-examined J.R. as to other allegedly inconsistent statements.  *See* Dkt. 2, pp. 18-20 (noting "subtle, but significant weaknesses, in the State's evidence" that were exposed through trial counsel's cross examination of J.R.).  The fact that the jury ultimately credited J.R.'s testimony over Warren's, and that trial counsel did not raise each and every perceived inconsistency that Warren would have attempted to raise if he had represented himself, does not suggest that trial counsel's performance was ineffective in this respect. *Cf. Bryant v. Brown*, 873 F.3d 988, 996 (7th Cir. 2017) (holding that a "decision not to impeach a particular witness is normally considered a strategic choice within the discretion of counsel").

Finally, there are no transcripts of J.R.'s prior statements (a statement to police and a pretrial deposition) in the record.  *See* Dkts. 11-1 and 11-2 (direct appeal appendix); Dkt. 11-3 (trial exhibits); Dkt. 11-7 (resentencing appendix); Dkt. 11-8 (resentencing exhibits); Dkts. 11-11 and 11-12 (post-conviction appendix); Dkt. 11-13 (post-conviction exhibits).  Instead, the only suggestion that such allegedly inconsistent statements were made comes from Warren himself, in an exhibit he created.  *See* Dkt. 2-1.  And even then, the alleged prior statements are removed from their context, with commentary provided by Warren.  *Id.*

Again, Warren is not required to show that he would ultimately prevail on his procedurally defaulted ineffective assistance of trial counsel arguments.  *Brown*, 847 F.3d at 515. But the fact

18

that he has not provided the transcripts of J.R.'s allegedly inconsistent statements, which he claims to possess, is dubious and weighs against a finding that his proposed arguments have some merit and that the Court should allow him to proceed under *Martinez*'s "narrow exception" to *Coleman*'s unqualified statement that an attorney's ignorance or inadvertence in a post-conviction proceeding does not excuse procedural default. *Martinez*, 566 U.S. at 9.

### 3.    Sufficiency of the Evidence

J.R. testified repeatedly about instances of abusive sexual intercourse and vaginal penetration committed by Warren when she was under the age of fourteen. *See Warren III* at *10. There is no good faith argument trial counsel could have made that the evidence supporting Warren's child molesting convictions was insufficient as a matter of law, as he contends in his habeas petition. Therefore, trial counsel could not have been ineffective for failing to raise a sufficiency argument, and this proposed argument also lacks some merit.

Warren has not shown that his procedurally defaulted arguments regarding ineffective assistance of trial counsel have "some merit," and post-conviction counsel's allegedly ineffective assistance does not excuse his procedural default. Accordingly, this claim is **denied**.

### E.    Post-Conviction Court's Failure to Hold a Resentencing Hearing

Warren claims the post-conviction court erred by failing to hold a resentencing hearing after vacating his convictions for child solicitation. Although he raised this claim to the Indiana Court of Appeals, he did not raise this claim to the Indiana Supreme Court. *See* Dkt. 10-19. As explained in Section III-B of this Order, this means the claim is procedurally defaulted. *See Perruquet*, 390 F.3d at 514. Warren does not argue that his procedural default should be excused, and no such excuse is apparent from the record. Accordingly, this claim for relief is **denied**.

19

## IV. <u>CERTIFICATE OF APPEALABILITY</u>

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  No reasonable jurist could conclude that Warren is entitled to relief on any of the issues he raised in his petition, or that the Court's procedural default ruling is incorrect.  Accordingly, a certificate of appealability is **SHALL NOT ISSUE**.

## V. <u>CONCLUSION</u>

Warren's Petition for a Writ Of Habeas Corpus is **DENIED**.  A certificate of appealability on his claim for ineffective assistance of trial counsel **SHALL NOT ISSUE**.  Final judgment in accordance with this Order shall now issue.

**SO ORDERED**.

Date:  2/24/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Larry Warren, #230853
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Jesse R. Drum
INDIANA ATTORNEY GENERAL'S OFFICE
jesse.drum@atg.in.gov